IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JAY DONALD WITKOWSKI,<br><br>Plaintiff,<br><br>vs.<br><br>CINDY McGILLIS-HINER and<br>PETER MOLNAR,<br><br>Defendants. | CV 24–49–H–DWM<br><br>OPINION<br>and ORDER |

Plaintiff Jay Donald Witkowski, a state pretrial detainee proceeding pro se, alleges that he was denied adequate medical treatment at Crossroads Correctional Center in Shelby, Montana and at Montana State Prison in Deer Lodge, Montana. (*See* Doc. 8.) Although he initially named several defendants, his claims were permitted to proceed against only Defendant Cindy McGillis-Hiner ("Hiner") and Peter Molnar. (*See* Doc. 9.) Hiner is the Chief of the Health Services Bureau at the Montana State Prison. (*See* Doc. 18 at 2.) Molnar is an advanced practice registered nurse who provided medical services at Crossroads Correctional Center, a privately-owned facility that houses state inmates. (*See* Doc. 17 at 8.) The parties have all moved for summary judgment. (Docs. 44, 45, 60.) For the reasons provided below, summary judgment is granted in favor of the defendants.

1

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims). On cross-motions for summary judgment, it is the court's "independent duty to review each cross-motion and its supporting evidence . . . to determine whether [the] evidence demonstrates a genuine issue of material fact." *Fair Hous. Council of Riverside*

---

[1] Defendants' motions were accompanied by the requisite *Rand* notices. (*See* Docs. 48, 64.)

*Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001). Each motion is therefore evaluated separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016) (quotation marks omitted).

## BACKGROUND

At summary judgment, the facts identified by the parties in their "Statements of Undisputed Facts" are generally considered undisputed and viewed in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). While such statements have been filed by the defendants, (*see* Docs. 47, 63), Witkowski has not filed a statement of disputed or undisputed facts but rather conventionally filed a USB drive containing hundreds of files. (*See* Doc. 44.) Because this Court has "no obligation to act as counsel or paralegal to *pro se* litigants," (Doc. 67 at 2 (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004))), Witkowski was ordered to show cause why summary judgment should not be granted in favor of the defendants based on his failure to comply with the Local Rules, (*id.* at 3). His response to that Order is comprised of conclusory statements of fact with no citation to any evidence or any reference to the already-filed exhibits. (*See* Doc. 68.) As a result, the facts presented by the defendants in their Statements of Undisputed Facts, (*see* Docs. 47, 63), are considered undisputed for the purpose of resolving the present motions. *See Soto*, 882 F.3d at 870; D. Mont.

L.R. 56.1(d).

I.  **Medical Claims**

Witkowski is a state prisoner that was housed at Crossroads Correctional Center from May 8, 2018 to December 19, 2023, (Doc. 63 at ¶ 3), when he was transferred to Montana State Prison, (Doc. 47 at ¶ 2). Witkowski alleges numerous illnesses and/or medical issues for which he believes he did not receive adequate care. The conditions include a hernia that pre-dated his incarceration, (Doc. 63 at ¶ 6); a 2018 knee infection that became septic, (*id.* ¶ 7); 2021 lump formation in his forearm, (*id.* ¶ 8); 2018–2022 leaky heart valve and cardiac issues, (*id.* ¶ 9); 2023–2025 back pain, (*id.* ¶ 10); 2018–2024 eye issues, (*id.* ¶ 11); and 2021 and 2025 rectal bleeding, (*id.* ¶ 12).[2] Witkowski also alleges that he suffers from depression and anxiety and received inadequate mental health treatment when his prescription from Wellbutrin was terminated in 2022. (*Id.* ¶ 14; Doc. 47 at ¶¶ 17– 21.) While Witkowski's pleadings refer to all these issues, the primary impetus for his lawsuit appears to be the delay in his back surgery that occurred when he was transferred from Crossroads to Montana State Prison in December 2023.

Though far from exhaustive, the care and treatment Witkowski received for

---

[2] Molnar also references an alleged urinary tract infection in 2025 that is not contained in the medical records. (*See* Doc. 63 at ¶ 13.) Because that condition is not reflected in the records and appears to post-date the filing of the operative pleading, it is not considered here.

4

the conditions outlined above is provided below.

### A.    Hernia

Witkowski began to report hernia pain in February 2019 but he indicated that "the hernia is typically easily reduced," and he declined further treatment by Crossroads providers on at least two occasions. (Doc. 63 at ¶ 6.) After he reported in tolerable pain in July 2019, the hernia was removed by a surgeon in October 2019. (*Id.*)

### B.    Knee Infection

Witkowski reported to Crossroads medical with an infected right knee on June 20, 2018 that was apparently caused by an ingrown hair. (Doc. 63 at ¶ 7.) The site was immediately cleaned and drained. (*Id.*) Because of his serious infection, Witkowski was transferred to the emergency room at Marias Medical Center that same day. The next day he was transferred to Benefis Hospital. (*Id.*) He was returned to Crossroads on June 29, 2018, and by July 2, he reported that his knee had largely recovered. (*Id.*)

### C.    Forearm Lumps

On January 11, 2021, Witkowski attempted to cut a lipoma from his forearm. (Doc. 63 at ¶ 8.) He was sent to Marias Medical Center for wound care and closure. (*Id.*) On August 7, 2021, Molnar removed a fatty lesion from Witkowski's left forearm after Witkowski reported it was painful. (*Id.*)

### D. Heart

While Witkowski was hospitalized for his knee infection, he was given an echocardiogram ("ECHO") on June 22, 2018. (Doc. 63 at ¶ 9.) The results showed a minor blood leak in Witkowski's heart valves but this issue did not cause any external symptoms or require treatment. (*Id.*) In July 2018, Witkowski met with Molnar who reviewed the ECHO results and noted that he would "consider [a] cardiology consult if pt develops symptoms, consider repeat ECHO if symptomatic." (*Id.*) Witkowski then complained of chest pain June 2021 and a "leaky heart valve" in April 2022. (*Id.*) Because he did not have any symptoms that would justify a cardiac follow-up, none was performed. (*Id.*) However, in 2024, the presence of a "cardiac murmur" and Witkowski's report of regular dizzy spells and a family history of heart disease resulted in a chest x-ray, which showed that Witkowski's heart was a normal size and there was "no active disease." (*Id.*; *see also* Doc. 47 at ¶ 24.)

### E. Back Pain

Witkowski has chronic back pain in the thoracic region, where he had a prior fusion following an accident. (Doc. 63 at ¶ 10.) In August 2019, he reported lower back pain as well. (*Id.*) He was given medication for pain management. (*Id.*) In May 2022, he complained of mid-back pain and was both x-rayed and given an MRI. (*Id.*) He also requested an extra mattress, which was denied due to

safety concerns. (*Id.*) Witkowski subsequently complained of low back pain and had a lumbar myelogram in February 2023. (*Id.*) He was seen by a doctor at Crossroads and referred to an orthopedic consult in March 2023, which recommended epidural steroid injections, which he regularly received. (*Id.*) Witkowski saw an orthopedic surgeon, Dr. Miller, in Great Falls in November 2023, and they discussed surgery. (*Id.*) While Witkowski elected to have surgery, no surgery was scheduled before he was transferred to Montana State Prison. (*Id.*; Doc. 47 at ¶¶ 26–28.) Once there, the Medical Review Panel determined in May 2024 that additional consultation was required before surgery could proceed. (Doc. 47 at ¶¶ 35–36.) A consult was performed on August 8, 2024 and further imaging was ordered. (*Id.* ¶ 38.) Witkowski was seen by Dr. Ottomeyer, an orthopedic surgeon, on September 11, 2024. (*Id.* ¶ 40.) On October 2, 2024, Dr. Ottomeyer agreed to proceed with the surgery, (*id.* ¶ 41), which then occurred on January 20, 2025, (*id.* ¶ 42).

F.   **Eyes**

Witkowski saw an eye doctor in June 2018 and received new glasses in July 2018. (Doc. 63 at ¶ 11.) There were no new developments following his optometry visit in December 2020. (*Id.*) While he sought an optometry visit in October 2022, he subsequently denied such a visit scheduled for December 2022. (*Id.*) In January 2023, he again requested and saw an optometrist who diagnosed

him with a slight amblyopia. (*Id.*) After complaining of blurry vision, he was examined at a local emergency room in July 2023, but no serious condition was noted. (*Id.*) He was scheduled for a follow-up visit with an optometrist but was transferred to Montana State Prison before a visit was scheduled. (*Id.*) After his transfer, he was seen April 6, 2024 and given a new glasses prescription and a note was made that Witkowski had "keratoconus" and would need to be seen annually. (*Id.*) On October 4, 2024, Witkowski was seen at Rocky Mountain Eye Care where the physician reviewed his keratoconus but concluded that it was "unlikely to progress." (*Id.*) Witkowski had follow-up appointments on April 29, 2025, and May 27, 2025 with no change. (*Id.*)

### G. Rectal Bleeding

On January 30, 2021, Witkowski sought treatment for blood in his stool. (Doc. 63 at ¶ 12.) Molnar evaluated him, diagnosed constipation and prescribed Colace, advising that if Witkowski did not improve they would run a hemoccult test. (*Id.*) Witkowski's records do not indicate any other issue in this area until June 2025, when he reported hemorrhoids and was given cortisone cream. (*Id.*) As of August 2025, he was expected to have a colonoscopy scheduled. (*Id.*)

### H. Mental Health Treatment

From 2018 to 2023, Witkowski was evaluated by mental health staff at Crossroads on a regular basis, including counseling and psychiatrist visits. (Doc.

8

63 at ¶ 14.) He reported suffering from anxiety and depression. (*Id.*) He was also provided with several medications, including Wellbutrin. (*Id.*) However, around May 2022, all Wellbutrin prescriptions were terminated because of purported widespread abuse of the drug within the prison system. (*Id.*) He was subsequently prescribed Lexapro, Prozac, and Remeron until he voluntarily terminated all medication in October 2023. (*Id.*) On February 20, 2024, Witkowski underwent an Initial Mental Health Evaluation with Dr. Sonnemann at Montana State Prison. (Doc. 47 at ¶ 19.) He was diagnosed with bipolar disorder and prescribed medication. (*Id.*) He has consistently seen mental health staff since that time. (*Id.* ¶ 20.)

## II. Procedural Background

On July 25, 2024, Witkowski filed suit, alleging Hiner and Molnar, among others, violated his Eighth Amendment rights by failing to provide him with adequate medical care, primarily the delay in his back surgery after he was transferred from Crossroads to Montana State Prison. (Doc. 2.) After that order was screened under 28 U.S.C. § 1915A, Witkowski filed an Amended Complaint on September 16, 2024. (Doc. 8.) That amended pleading once again referred to his delayed surgery, but also added several other conditions discussed above. (*See id.*) On September 30, 2024, Molnar and Hiner were ordered to answer, (Doc. 9), which they did, (Docs. 13, 14). A scheduling order was issued on December 4,

9

2024. (Doc. 16.)

On October 23, 2025, Witkowski filed a motion for summary judgment on the grounds that he was "denied timely and adequate medical care for [his] serious medical conditions during [his] incarceration, which led to significant harm." (Doc. 44.) On November 3, 2025, Hiner also filed a motion for summary judgment on the grounds that: (1) Witkowski failed to exhaust his administrative remedies, (2) Hiner was not deliberately indifferent, and (3) Hiner is entitled to qualified immunity. (Doc. 45). On December 1, 2025, Molnar filed a cross-motion for summary judgment, arguing that some of Witkowski's claims are procedurally barred and that others fail under the deliberate indifference standard. (Doc. 60.) These three motions are ripe of adjudication.[3]

## ANALYSIS

Because Defendants Molnar and Hiner are from different facilities and have different roles, their motions are discussed separately below. Because Witkowski was at Crossroads before he was at the Montana State Prison, Molnar's conduct is discussed first. Ultimately, summary judgment is granted in favor of defendants.

**I.   Molnar**

---

[3] On January 7, 2026, Witkowski filed a "Motion: to include this notice" in which he states that the staff at the Montana State Prison has taken retaliatory actions related to his medical care. (Doc. 66.) Because the alleged misconduct post-dates the filing of the operative pleading, they are not part of this litigation.

Witkowski was at Crossroads, under Molnar's care, for five years. As a result, several of his medical issues were addressed prior to 2021, making any claims based on those conditions untimely. For his remaining medical conditions, the undisputed record shows that Witkowski received consistent, medically adequate care while at Crossroads. Accordingly, Molnar is entitled to summary judgment on all Witkowski's claims.

### A. Compliance with the Local Rules

Molnar first argues that summary judgment should be granted in his favor because Witkowski failed to file a statement of disputed or undisputed facts as required by the Local Rules of this Court. *See* D. Mont. L.R. 56.1. As discussed above, Witkowski was given an additional opportunity to remedy his noncompliance, (Doc. 67), and failed to do so, (*see* Doc. 68). Accordingly, for the purposes of the present motions, the facts presented by Molnar and Hiner are considered undisputed; Witkowski's claims are resolved on that record.

### B. Statute of Limitations

Molnar further argues that Witkowski's claims regarding his hernia, knee infection, rectal bleeding, and forearm lumps are time-barred. He is correct. "Because § 1983 does not contain a statute of limitations, federal courts apply the forum state's statute of limitations for personal injury claims." *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000). Montana's personal injury statute

11

of limitations is three years. Mont. Code Ann. § 27–2–204. "[A] claim accrues when [a] plaintiff knows, or should know, of the injury which is the basis for the cause of action." *Johnson*, 207 F.3d at 653. Witkowski's chronic hernia was repaired in 2019, (*see* Doc. 63 at ¶ 6), his infected knee was diagnosed and treated in June 2018, (*id.* ¶ 7), his self-inflicted surgery to cut out the lipoma on his arm occurred in January 2021,[4] (*id.* ¶ 8), and his rectal bleeding was treated in January 2021, (*id.* ¶ 12). Because these conditions were resolved more than three years before this lawsuit was filed in July 2024, (*see* Doc. 2), any claim against Molnar based on these facts is time-barred.

## C. Deliberate Indifference

Section 1983 confers a tort remedy upon individuals "whose constitutional rights have been violated by state officials acting 'under color of' law." *Whalen v. McMullen*, 907 F.3d 1139, 1145 (9th Cir. 2018) (quoting 42 U.S.C. § 1983). "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976)). To prevail on an Eighth Amendment claim for inadequate medical care, a

---

[4] Although Molnar performed additional lipoma surgery on Witkowski in August 2021, (*see* Doc. 63 at ¶ 8), there does not appear to be a claim of misconduct or delay associated with this treatment.

12

plaintiff must show "deliberate indifference" to his "serious medical needs." *Id.* (quoting *Estelle*, 429 U.S. at 104). This two-part inquiry includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). "Deliberate indifference is a high legal standard," under which "the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (internal quotation marks and citation omitted). "[A]n inadvertent failure to provide adequate medical care, differences of opinion in medical treatment, and harmless delays in treatment are not enough to sustain an Eighth Amendment claim." *Simmons v. G. Arnett*, 2022 WL 3906207, at *5 (9th Cir. Aug. 31, 2022) (collecting cases).

Molnar argues that the remainder of Witkowski's claims fail under the Eighth Amendment because he received timely and adequate medical care while at Crossroads and therefore cannot show a "deliberate indifference" to his medical needs. Because Molnar is correct, summary judgment is granted in his favor.

1. **Heart Issues**

As outlined above, a June 2018 echocardiogram showed that Witkowski has a minor blood leak in his heart valves but this minor issue did not cause any external symptoms and did not require treatment while he was still at Crossroads. Witkowski presents no evidence to the contrary and fails to show that he suffered any heart-related harm while at Crossroads. And his "request for relief" merely asks for "regular doctor appointments/checkups with cardiologist for heart issues." (Doc. 8 at 13.) In the absence of an alleged deficiency of care related to his heart that caused him harm while he was at Crossroads, his claim against Molnar fails.

### 2. Back Pain

The crux of this case is Witkowski's claim for delayed care related to his back surgery; however, his medical records show that Crossroads provided consistent care for this issue, beginning with pain management, imaging, and testing, advancing to injections, and culminating in his consultation with a surgeon in November 2023. Witkowski presents no evidence that this type of stepped-up care was medically inappropriate, let alone deliberately indifferent. Moreover, after the November 2023 consultation, Crossroads agreed to "get him set up for L5-S1 interbody fusion via anterior approach w posterior instrumentation and fusion." (Doc. 63 at ¶ 10.) However, the next month he was transferred to Montana State Prison. Thus, any delay from the point forward is not attributable to Crossroads or Molnar, who passed along the recommendation and approval for

14

back surgery when he was transferred. Accordingly, this claim also fails.

### 3. Eyes

Witkowski alleges that he has not received adequate care for his eye issues, specifically that he has been diagnosed with keratoconus, which, if left untreated, can have long-term negative impacts on vision. Once again, however, his medical records show that he received responsive, consistent care when he made medical requests related to his eyes. Those records also indicate that despite two optometry visits and one visit to the emergency room in 2022 and 2023, his symptoms did not escalate until the fall of 2023, just before he left Crossroads. Further, Witkowski's keratoconus was not diagnosed until April 6, 2024, four months after he left Crossroads. Accordingly, this claim also fails.

### 4. Mental Health Treatment

Finally, Witkowski alleges that he was denied adequate mental health treatment when he was taken off Wellbutrin and not prescribed an adequate replacement. Molnar contends that all inmates were taken off Wellbutrin in 2022 because it was subject to widespread abuse. But the failure to provide adequate medical care cannot be excused for a non-medical reason. Thus, Molnar's contention that the fact Wellbutrin can be abused[5] does not insulate him from

---

[5] Molnar's affidavit further states that there is a June 22, 2022 note indicating that Witkowski specifically "had abused other mediations" at Crossroads. (Doc. 62 at ¶ 15.) However, the only medical visit that appears to correspond to that date was

liability. Nonetheless, a difference in opinion about treatment between plaintiff and prison medical authorities "does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). An inmate's preference for a particular medication that is not provided by an institution does not, by itself, give rise to deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to [the prisoner's] health." *Id.* (alteration in original) (internal quotation marks omitted). Such a showing has not been made here.

Witkowski's medical records show that Crossroads made consistent efforts to find a medication alternative to Wellbutrin that worked for Witkowski, with some success. After Witkowski's Wellbutrin prescription was discontinued in May 2022, he voluntarily declined to go on any other mental health medication. (Doc. 62-8 at 40.) A few weeks later, he changed his mind and sought out additional care, including new medication options. (*Id.* at 39.) In July 2022, he was prescribed Lexapro, which "helped" with his symptoms in the past. (*Id.* at

---

for Witkowski's back, and those notes state that he was "having extreme pain" and took a "3000mg of naproxen and 2000mg of Tylenol." (Doc. 62-5 at 20–21.) This is an insufficient record to infer that Witkowski personally posed a risk of abusing Wellbutrin.

42.) In October 2022, his dosage was doubled after he reported increased symptoms. (*Id.* at 43.) His medication was adjusted again in January 2023, (*id.* at 44), and in April 2023, (*id.* at 45). In June 2023, Witkowski reported that his "medication helps" and that he "wishe[d] to continue" their use. (*Id.* at 46.) His medication was adjusted again in September 2023, (*id.* at 50), although within a month, he reported that the new medication made him "too sleepy" and ceased taking it, (*id.* at 51). He was subsequently transferred to Montana State Prison. The above shows that Crossroads consistently addressed Witkowski's mental health medication needs. In the absence of deliberate indifference, this claim also fails on this record.

## II.  Hines

In her motion for summary judgment, Hines argues that she should prevail on three alternative grounds: (1) Witkowski failed to exhaust his administrative remedies, (2) she was not deliberately indifferent, and (3) she is entitled to qualified immunity. Because Hines is correct as to her first argument, the latter two are not addressed.

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. §] 1983 . . . or any other Federal law[] by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This means "a prisoner must

complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See id.* at 216 (explaining "failure to exhaust is an affirmative defense under the PLRA"). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Thus, once the defendant has carried his burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

Here, Montana State Prison Procedure 3.3.3 governed the grievance process at the time of the alleged misconduct. To begin that process, an inmate must file

an informal resolution form with the unit manager within five working days of the underlying cause of the complaint. (Doc. 47-4 at 3–4.) By its explicit terms, that process applies to grievances based on health and medical care. (*See id.* at 2, 7–8.) According to Hiner, Witkowski did not file a grievance related to any medical issues after he was transferred to Montana State Prison in December 2023. (Doc. 47 at ¶¶ 45–47.) Witkowski has not presented any evidence to the contrary. Indeed, his Amended Complaint merely states that he "filed numerous kites, grievances, and appeals, *while at Crossroads Correctional Facility*." (Doc. 8 at 14 (emphasis added); *see also id.* at 16 (stating that he filed his grievances at "Crossroads Correctional Facility"); *id.* at 17 (listing several grievance dates, all in 2022, when he was still at Crossroads).) Because Witkowski failed to exhaust his administrative remedies for his claims against Hiner as required by the PLRA, summary judgment is granted in favor of Hiner.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1. Witkowski's motion for summary judgment (Doc. 44) is DENIED.

2. Molnar's cross-motion for summary judgment (Doc. 60) is GRANTED.

3. Hiner's motion for summary judgment (Doc. 45) is GRANTED.

4. The Clerk is directed to enter judgment in favor of Defendants Molnar

and Hiner and close the case file.

DATED this \_\_18th\_\_ day of February, 2026.

                                                         _____
                                                         Donald W. Molloy, District Judge
                                                         United States District Court